## VALIDITY OF ORDINANCE APPROVED BY VICE-MAYOR.

Circuit Court of Lorain County.

HARRY A. POUNDS v. CITY OF ELYRIA.

Decided, April 29, 1910.

*Municipal Ordinances—Veto of Mayor—Approval of Vice-Mayor.*

An ordinance of a municipality which the mayor thereof vetoes and returns to the council before its next session, is not rendered valid by the approval of the vice-mayor and his signature to it, given in the interim on a day when the mayor is temporarily absent from the city.

*H. A. Pounds* and *P. H. Boynton,* for plaintiff in error.
*H. A. Pounds,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Suit was brought by Pounds, as solicitor, on behalf of the city of Elyria, at the request of a tax-payer. The purpose of the suit is to enjoin the city authorities from paying certain officers of the city salaries to which these several officers claim to be entitled. Unless restrained by order of the court the city authorities will pay the salaries, it is claimed on the part of the plaintiff, to several officers to which salaries it is claimed the several officers are *not* entitled.

The whole question depends upon the validity of an ordinance passed by the council of the city of Elyria on the 14th day of December, 1909, fixing the salaries of these several officers. If that ordinance is valid, the petition in this case must be dismissed. If invalid, the injunction must be granted. On the date last mentioned, one David S. Troxel was mayor of the city of Elyria, and F. N. Smith the president of the council of said city. On the evening of that date the ordinance referred to was passed.

The statute in force at the time provides that:

"Every ordinance or resolution of council shall, before it goes into effect, be presented to the mayor for approval, the mayor, if he approves the same, shall sign it, and return it forthwith to

council; but if he does not approve it, he shall, within ten days after its passage or adoption, return the same with his objections to council, or, if council is not in session, return it to the next regular meeting thereof, which objections council shall cause to be entered upon its journal.''

Another section of the statute in force at the time reads:

''When a mayor is absent from the city, or is unable for any cause to perform his duties, the president of council shall be the acting mayor.''

The council having passed the ordinance, as already stated, on the evening of the 14th of December, 1909, it was left with the clerk, or deputy clerk of the city, in the clerk's office, and on the morning of the 15th of December the mayor's attention was called to it by the clerk or deputy clerk. He took no action whatever in regard to the matter at that time except to say that he would look into the matter. On the next day, the 16th of December, the mayor went to Cleveland in the early part of the day and returned home to Elyria in the evening, after business hours. Before the next meeting of the council, which was the 21st of December, the mayor had prepared a message vetoing the ordinance, which was sent to the council and read at its meeting on the 21st of December. Meanwhile, however, on the 16th of December while the mayor was in Cleveland, the president of the council had signed this ordinance, approving it, claiming to act under the statute as mayor, the mayor being absent from the city. If the action of the president of the council in signing this ordinance, as approved by him, constitutes it a valid ordinance, the affairs of the several municipalities in this state are in a most remarkable situation, and are very little, if any, protected in any wise by any vetoing power conferred upon the mayor. In the city of Akron the present mayor has a summer residence where he spends with his family, probably half of the year, some five miles out of the city. An electric railway passes his country home, which affords him means of going between the city and such home every thirty or forty minutes, but still, while he is at that home he is outside the city, and if it is to be held that the moment the mayor is outside of

the city limits the president of the council, or vice-mayor, as we call him, can act, all that it is necessary at Akron for the vice-mayor to do, if he knows that his views and those of the mayor do not correspond, is to watch until the mayor shall get beyond the boundary line of the municipality and then approve an ordinance which has been passed, and which he knows the mayor intends to veto. Indeed, if the claim of the defendant here is sound, the mayor might have prepared a veto message on the 15th ready to be delivered to the council; the vice-mayor might have known that such a message was already prepared and would be presented to the council at its next meeting, and yet he might, by simply signing his name to this ordinance, make it valid. The claim is unsound. It is not a fair construction of the statute which provides that the president of the council shall be the acting mayor when the mayor is absent from the city, nor to say that this means that every time the mayor gets outside of the lines of the municipality the vice-mayor may at once take up the duties of the mayor and perform them without reference to what length of time the mayor is expected to be absent. It is true that the mayor was absent when this ordinance was signed. It is equally true that neither the vice-mayor nor the city clerk nor anyone else had a right to suppose that he would be absent beyond the evening of that day, the 16th of December, and it is absurd to say that the Legislature intended that in a temporary absence like that and on a matter that the mayor had a week in which to act, the vice-mayor might take it up and act on it and thereby prevent any action of the mayor from having any effect on the legislation. The reason given in the argument for the hurry of having this ordinance approved does not commend itself to the court. It is said that in order to get the publication of this ordinance in one of the newspapers, in which by law such publication must be had, and so have the ordinance become valid to be of benefit to the incoming officers, it was necessary that it be approved that day, but this was as well known long before, as on that particular day, and the council could have passed the ordinance at an earlier day, or those interested in it could have seen the mayor on the 15th, and if they found that he would approve the ordinance, could have obtained his

signature on that date, but as it turns out that the mayor would not approve the ordinance, it is perfectly manifest that it would have been of no avail to these officers to have presented the matter to the mayor on the 16th, because he would not have approved it.

The injunction prayed for is allowed.